KAYLA M. NEVILLE

VERSUS

JOHN W. REDMANN, LAW OFFICE OF JOHN
W. REDMANN, LLC, AND XYZ INSURANCE
COMPANY

NO. 22-CA-175

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 816-050, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

December 31, 2022

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Hans J. Liljeberg

**REVERSED AND REMANDED**
    **SJW**
    **HJL**

**CONCURS WITH REASONS**
    **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
KAYLA M. NEVILLE
        Michael G. Bagneris
        John O. Pieksen, Jr.

COUNSEL FOR DEFENDANT/APPELLANT,
JOHN W. REDMANN AND THE LAW OFFICE OF JOHN W. REDMANN,
LLC
        Melissa M. Lessell
        Karen P. Holland
        Beverly A. Delaune
        Blair E. Boyd

**WINDHORST, J.**

In this appeal, defendants/appellants, John W. Redmann and the Law Office of John W. Redmann (collectively "Redmann"), seek review of the trial court's judgment granting partial summary judgment in favor of plaintiff/appellee, Kayla Neville ("Ms. Neville"). For the following reasons, we reverse that judgment.

Ms. Neville filed a legal malpractice suit against Redmann, alleging that her request for a medical review panel, in an underlying medical malpractice case in which Redmann represented her, was untimely filed resulting in the dismissal of her medical malpractice claim with prejudice. Redmann seeks appellate review of the trial court's granting of a partial summary judgment in favor Ms. Neville finding Redmann liable for legal malpractice, and reserving the issue of damages for future consideration. In its judgment, pursuant to the doctrines of law of the case and *res judicata*, the trial court found this court's writ disposition in that underlying case, which found her claim had prescribed, was judicially binding in this case upon Redmann, and therefore determined Redmann liable for legal malpractice for the untimely filing of her medical malpractice claim. We find the trial court erred as a matter of law in applying the doctrines of law of the case and *res judicata* because the instant case involves different parties.

**BACKGROUND and PROCEDURAL HISTORY**

This legal malpractice case arises from Ms. Neville's potential medical malpractice claim following surgery to repair an injury she sustained to her right forearm while working at Walt Disney World. Because the instant legal malpractice case is based on Redmann's representation of Ms. Neville in the underlying medical malpractice case, it is necessary to discuss the factual circumstances that gave rise to the underlying cause of action as well as the legal malpractice claim.

*Medical Malpractice Suit*

In June 2016, Ms. Neville allegedly tore her triceps tendon in her right arm while working as an intern at Walt Disney World in Orlando, Florida. Ms. Neville reported her injury to her employer and workers' compensation proceedings were initiated on May 25, 2017, that did not resolve until sometime between June 2019 and February 2020, according to the petition for workers' compensation benefits and corresponding documents.

In October 2016, Ms. Neville returned to New Orleans, and her treatment was transferred to Dr. Felix Savoie ("Dr. Savoie") at Tulane Institute of Sports Medicine. In February 2017, after the conservative treatment plan failed to produce the desired outcome, Dr. Savoie recommended surgery to repair her right elbow triceps tendon. Dr. Savoie discussed the details of the surgery as well as the risks and benefits associated with it, including the possible need for further surgery, the risk of implant and hardware failure, failure of repair, and partial or complete loss of function. Ms. Neville elected to proceed with surgery, and the procedure was performed on February 13, 2017.

Ms. Neville continued post-operative treatment with Dr. Savoie through August 2017. Dissatisfied with her progress, Ms. Neville sought a change of provider through Disney. By August 30, 2017, Ms. Neville began treating with Dr. Claude Williams ("Dr. Williams"). On November 20, 2017, Dr. Williams recommended surgery to remove the suture anchors from Ms. Neville's olecranon. In notes from Ms. Neville's November 2017 examination, Dr. Williams indicated that based on the MRI images "[Ms. Neville] appears to have had an excellent repair of the triceps tendon which has healed very well…I explained that now that the tendon is healed the suture anchors which were necessary for the repair are no longer required and can be removed. …"

Surgery with Dr. Williams was performed on December 12, 2017. In March 2018, Dr. Williams explained to Ms. Neville that in one month, he expected her to "achieve maximum medical improvement." By April 2018, it was determined that Ms. Neville had reached maximum medical improvement and that she had a partial permanent impairment. Ms. Neville continued to experience pain, and a third surgery was recommended, which was subsequently performed on September 18, 2018.[1]

### *Redmann's Representation of Ms. Neville*

In July 2018, Ms. Neville consulted with Redmann regarding her injury and the subsequent medical treatment she received with Dr. Savoie. According to John Redmann's affidavit, during the initial consultation, Ms. Neville indicated that she had filed a workers' compensation claim that Thomas Vaughn, a Florida attorney, was handling on her behalf. Ms. Neville then retained Redmann to represent her in pursuit of a medical malpractice claim against Dr. Savoie.

On December 12, 2018, Redmann, on behalf of Ms. Neville, filed a request for a Medical Review Panel ("MRP") proceeding with the Patient Compensation Fund, which named Dr. Savoie and Omega Hospital as defendants. The request states that:

> Ms. Neville alleges that medical malpractice occurred during a surgery on February 13, 2017, while under the care of Dr. Savoie and while on the premises of Omega Hospital but did not become aware of said malpractice until December 17, 2017, when a corrective surgery was performed and/or on July 18, 2018, when a permanent disability impairment in her right arm was diagnosed.

The request also stated that Ms. Neville underwent a second corrective surgery to address nerve and bone damage allegedly caused by the initial surgery performed by Dr. Savoie.

Thereafter, Ms. Neville filed a petition to institute discovery in the trial court. However, after initial discovery by the parties and Redmann's continued review of

---

[1] According to her medical records, Ms. Neville continued to treat with Dr. Williams through 2020.

Ms. Neville's claim, Redmann concluded that her case would ultimately not be successful.

In February 2019, Redmann discussed its assessment of Ms. Neville's case with Ms. Neville by telephone. During the call, Ms. Neville expressed that she still wanted to pursue her claim for medical malpractice. As a result, it was decided that Redmann would withdraw from representing Ms. Neville, and Ms. Neville would find new counsel to represent her. The conversation was memorialized in a February 20, 2019 letter addressed to Ms. Neville. A second letter, dated March 1, 2019, was sent regarding Redmann's withdrawal from representation and was successfully delivered on March 5, 2019. Notice of its withdrawal from representation was also sent to the Patient Compensation Fund. After August 9, 2019, Redmann took no further action on Ms. Neville's behalf.

### *Successor Counsel's Representation of Ms. Neville*

On September 19, 2019, Dr. Savoie filed a peremptory exception of prescription in the medical malpractice suit. Dr. Savoie alleged that Ms. Neville's MRP request was prescribed as it was filed approximately 13 months after Ms. Neville allegedly learned, in November 2017, of her potential medical malpractice claim. In support of his exception, Dr. Savoie submitted copies of Ms. Neville's request for MRP, a two-page excerpt of Ms. Neville's medical records from her November 16, 2017 clinic visit with Dr. Savoie, and Ms. Neville's certified medical records relating to her treatment with Dr. Williams. Omega Hospital also filed an exception of prescription in November 2019, which adopted the arguments Dr. Savoie asserted in his exception. Omega Hospital also alleged that any error of Omega Hospital had prescribed because its treatment of Ms. Neville ended following her February 2017 surgery.

Ms. Neville, through new counsel at Bagneris, Pieksen, & Associates, LLC ("successor counsel"), filed her opposition to Dr. Savoie's exception in December

2019.[2] Ms. Neville's opposition alleges that she filed her MRP request within one year of "discovering that the screws previously inserted into her olecranon (ulnar humeral joint) w[]ere not absorbable screws as she had been informed." The opposition also alleged that her MRP request was filed within one year of "the removal of the non-dissolvable and non-absorbable screws." Additionally, Ms. Neville alleged her case required retrieval of the evidence from the second surgery to confirm the malpractice, analogizing her tort claim to a "foreign object case" in which an inappropriate object was left in a patient. Ms. Neville did not attach any evidence in support of her opposition.

At the hearing on the exceptions, in February 2020, Dr. Savoie introduced the request for a MRP and the excerpts of Ms. Neville's medical records relative to her treatment with Drs. Savoie and Williams.[3] By contrast, Ms. Neville did not introduce any documentary evidence or call any witnesses to testify in support of her claim that her MRP request was timely filed. The trial court denied the exceptions, concluding that Ms. Neville would not have known of any potential medical malpractice claim until the screw was removed because "simply by being told the screw didn't absorb" would not necessarily alert her to a potential claim.

Dr. Savoie sought this court's supervisory review in April 2020. This court ordered Ms. Neville to file an opposition on or before April 20, 2020. Successor counsel filed a four-page opposition to Dr. Savoie's writ application with a request to supplement as successor counsel did not receive this court's order until April 17, 2020; however, no supplemental filing was submitted.[4] This court subsequently denied the writ for failure to comply with the Uniform Rules in May 2020.

---

[2] Ms. Neville did not file an opposition to Omega Hospital's exception of prescription.

[3] At the hearing, Omega introduced evidence in support of its exception of prescription and argued that because Ms. Neville failed to file an opposition to its exception, the exception should be granted as unopposed.

[4] Ms. Neville's opposition to Dr. Savoie's writ application alleged that "only after the screw was retrieved" could she have had "the necessary knowledge to definitively assert a medical malpractice claim." Ms. Neville did not submit any portion of the record or evidence to support her assertions in opposition to the writ application.

However, this court granted Dr. Savoie's subsequently filed motion to reconsider, requesting an opportunity to supplement his writ application due to complications resulting from the Covid-19 pandemic and the Governor extending legal deadlines.

In June 2020, Dr. Savoie filed an amending and supplemental writ application, but no supplemental response was submitted on Ms. Neville's behalf. This court, on June 30, 2020, granted Dr. Savoie's writ application, reversed the trial court's denial of Dr. Savoie's exception of prescription and dismissed Ms. Neville's medical malpractice claim. Ms. Neville filed a writ of certiorari with the Louisiana Supreme Court, which was denied on November 4, 2020.

### Ms. Neville's Legal Malpractice Suit

On March 25, 2021, Ms. Neville filed the instant legal malpractice suit against Redmann for untimely filing her medical malpractice suit, which resulted in her claim being dismissed with prejudice. On September 21, 2021, Ms. Neville filed a motion for partial summary judgment that alleged "there is no genuine issue of fact regarding defendant's legal malpractice, which has been conclusively established as a matter of law." Ms. Neville argued that this court's June 30, 2020 writ, which held that her medical malpractice suit prescribed as of November 17, 2018, was a binding judicial determination which made her December 12, 2018 MRP request untimely. Relying on the legal theories of *res judicata* and the law of the case doctrine, Ms. Neville argued that she is "entitled to summary judgment on liability." In support of her motion, Ms. Neville attached copies of this court's June 30, 2020 writ granted in No. 20-C-127, and the Louisiana Supreme Court's November 4, 2020 denial of certiorari in No. 20-CC-968.

Redmann opposed the motion for summary judgment, arguing that as a matter of law, the doctrines of *res judicata* and law of the case do not apply. Further, Redmann claimed that genuine issues of material fact remain as to causation and damages, making summary judgment inappropriate. In support of its opposition,

Redman filed a number of exhibits.[5]  The matter was heard on December 14, 2021, and on January 27, 2022, the trial court issued a judgment granting Ms. Neville summary judgment on liability, but reserving the issue of damages for later determination.  The trial court issued written reasons, stating:

> The prescription issue in the present motion is the identical prescription issue already decided by the Louisiana Court of Appeals for the Fifth Circuit. Given the precedential and binding nature of this Fifth Circuit ruling, the principles of the law of the case doctrine and res judicata, and this Court's review of the law and evidence, this Court holds that defendants untimely filed the request for Medical Review Panel, allowing Ms. Neville's medical malpractice claim against Dr. Savoie to prescribe and consequently be dismissed with prejudice.  It is undisputed that defendants were Ms. Neville's legal counsel in November/December 2018 and that defendants did not file the request for Medical Review Panel until December 12, 2018. The Court holds that under the undisputed facts and the applicable law, the plaintiff is entitled to partial summary judgment on the issue of liability against defendants. The defendants' untimely request for Medical Review Panel was a breach of defendants' duty to Ms. Neville to timely file the request.

Redmann filed the instant appeal seeking review of the trial court's January 27, 2022 judgment granting Ms. Neville's motion for partial summary judgment.

**STANDARD OF REVIEW**

The issue on appeal is whether the trial court properly granted summary judgment in favor Ms. Neville in this legal malpractice suit.  Appellate courts review summary judgments *de novo* using the same criteria as the trial courts to determine whether summary judgment is appropriate.  Lapuyade v. Rawbar, Inc., 18-474 (La. App. 5 Cir. 12/27/18), 263 So.3d 508, 511-12.  "Therefore, appellate courts must ask the same questions as the district court: whether there is any genuine issue of material fact, and whether mover is entitled to judgment as a matter of law."  Id. at 512.

---

[5] Redmann attached to its opposition and introduced at the hearing on summary judgment the following: Ms. Neville's December 12, 2018 request for a MRP; Redmann's February 20, 2019 withdrawal from representation letter; Ms. Neville's May 2017 and July 2018 petition for workers' compensation benefits; Dr. Savoie's September 16, 2019 exception of prescription; Omega's November 10, 2019 exception of prescription; Ms. Neville's December 23, 2019 opposition to the exception of prescription; the February 7, 2020 exception hearing transcript; the trial court's March 4, 2020 judgment denying the exceptions; Dr. Savoie's April 6, 2020 writ application; Ms. Neville's April 20, 2020 opposition to the writ application; this court's May 13, 2020 denial of Dr. Savoie's writ application for noncompliance; Dr. Savoie's May 19, 2020 motion for reconsideration; this court's May 26, 2020 granting of rehearing; Dr. Savoie's June 12, 2020 first supplemental and amending application for rehearing; this court's June 30, 2020 granting of Dr. Savoie's writ application.

**LAW and ANALYSIS**

Pursuant to La. C.C.P. art. 966 A(1), a party may move for summary judgment on all or part of the relief requested. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3). The burden of proof rests with the mover, unless the mover will not bear the burden of proof at trial on the issue before the court on summary judgment. La. C.C.P. art. 966 D(1). In that instance, the mover need only show the court the absence of factual support for one or more essential elements of the adverse party's claim. Id. The burden is then on the adverse party to establish factual support sufficient to demonstrate the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. Id. A court's determination of whether a genuine issue of material fact exists requires reference to the applicable substantive law. Hacienda Holding Co., L.L.C. v. Home Bank, 20-189 (La. App. 5 Cir. 12/30/20), 309 So.3d 435, 445 (citing Stephens v. Southern Sweeping Servs., 03-826 (La. App. 5 Cir. 11/25/03), 862 So.2d 197, 199). A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. La. C.C.P. art. 966 E.

To prevail in a legal malpractice claim, the plaintiff must prove: (1) an attorney-client relationship; (2) the attorney was negligent in his representation of his client; and (3) the negligence caused plaintiff's loss. Willis v. Meilleur, 11-705 (La. App. 5 Cir. 5/31/12), 96 So.3d 1259, 1270, citing Costello v. Hardy, 03-1146 (La. 1/21/04), 864 So.2d 129, 138. Failure to prove one of these elements is fatal to the claim. Id. A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim. Costello, 864 So.2d at 138.

In this legal malpractice case, in order to prove she is entitled to summary judgment on liability, Ms. Neville must prove there are no genuine issues of material fact as to all three elements of legal malpractice. Liability cannot be proved simply by Ms. Neville establishing Redmann breached the standard of care, or that he was negligent in his representation of her. She must *also* prove that she suffered damages, *and* that Redmann's alleged negligent representation caused her loss. See Fortenberry v. Cont'l Cas. Co., 15-418 (La. App. 3 Cir. 11/4/15), 179 So.3d 729, 735, in which the court found that "liability does not attach until it is shown that the plaintiff suffered damages for which she would have recovered but for the attorney's mishandling of the suit, and where the attorney establishes a material issue of fact regarding the plaintiff's underlying damages, summary judgment was granted in error." See also MB Indus., LLC v. CNA Ins. Co., 11-303 (La. 10/25/11), 74 So. 3d 1173, 1187, in which the Louisiana Supreme Court held that it is not enough to simply show that the defendant attorney acted negligently, but the plaintiff must also introduce evidence that the negligence caused plaintiff's loss.

Ms. Neville's motion for partial summary judgment states that "there is no genuine issue of material fact regarding [Redmann's] legal malpractice" and that "she is entitled to a summary judgment on liability, based on the precedential and preclusive nature of [this Court's June 30, 2020 writ disposition in the underlying proceeding]." The trial court granted summary judgment on liability based on the doctrines of law of the case and *res judicata*, while reserving the issue of damages—an essential element in a legal malpractice case—for subsequent consideration.

Further, La. C.C.P. art. 966 F mandates that summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. Rhodes v. AMKO Fence & Steel Co., LLC, 21-19 (La. App. 5 Cir. 10/28/21), 329 So.3d 1112, 1123. Louisiana summary judgment law has restricted the trial court's ability to render a

summary judgment to those issues set forth in the motion under consideration. Cutrone v. Eng. Turn Prop. Owners Ass'n, Inc., 19-0896 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1215; Bryant v. Premium Food Concepts, Inc., 16-0770 (La. App. 1 Cir. 4/26/17), 220 So.3d 79, 83, writ denied, 17-0873 (La. 9/29/17), 227 So.3d 288 (court of appeal limited consideration to issues raised in motion for summary judgment and refused to consider any similar elements required by other laws that may be applicable to the case). A court cannot render a motion for summary judgment dismissing a claim which has not been challenged by the pleading. Steib v. Lamorak Ins. Co., 20-0424 (La. App. 4 Cir. 2/3/21), writ denied, 21-453 (La. 6/8/21), 317 So.3d 326.

La. C.C.P. art. 966 C(4) mandates that "[i]n all cases, the [trial] court shall state on the record or in writing the reasons for granting or denying the motion." *De novo* review generally "involves examining the facts and evidence in the record, without regard or deference to the judgment of the trial court or its reasons for judgment." Cutrone, 293 So.3d at 1216. Certain circumstances, however, present a carved-out exception to the general rule that a trial court's reasons are not relevant. Id. Stated otherwise, a trial court's reasons for judgment are relevant when there is a question posed regarding the trial court's *scope* of review. Id. In this case, the reasons for judgment indicate that the trial court's consideration of the issues were limited to those raised in Ms. Neville's motion, the doctrines of "law of the case" and *res judicata*.

For purposes of summary judgment in this case, there is a significant difference between a finding of negligence and a finding of liability. In a legal malpractice action, negligence is one of three elements that must be proved in order for a plaintiff to prevail; whereas, liability requires proof of all three elements in order for the plaintiff to succeed. Thus, although it is possible that plaintiff may successfully prove she is entitled to partial summary judgment on the issue of

*negligence* without establishing the third element of a legal malpractice claim, the same cannot be said for *liability*. Although it is plausible that Ms. Neville's plea in her motion for partial summary judgment to rule on the issue of "liability," was in fact calling on the trial court to evaluate the issue of negligence, the argument was never raised in reply to Redmann's opposition, which argued that liability requires proof of all three elements, including causation. Therefore, because Ms. Neville's motion asks the trial court to rule on the issue of liability, and not negligence, we consider on *de novo* review the full scope of the liability issue, with fresh consideration of the exhibits, applicable law, and arguments raised by both parties.

It is undisputed that there was an attorney-client relationship between Ms. Neville and Redmann in this matter. Ms. Neville is next required to prove Redmann was negligent in its representation of her in the underlying action for medical malpractice. She must prove that Redmann failed to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. MB Indus., LLC, 74 So.3d at 1184.

Ms. Neville claims the act of negligence in this case was Redmann's failure to timely file her medical malpractice claim. In support of her motion for partial summary judgment, Ms. Neville produced a copy of this court's June 30, 2020 writ and the Louisiana Supreme Court's November 4, 2020 denial of certiorari on the exception of prescription in the underlying medical malpractice suit. In an unpublished writ disposition, based on the record before us at the time, this court held that Ms. Neville had constructive knowledge of a potential medical malpractice claim as of November 16, 2017, and she had until November 16, 2018, to file a claim in order to avoid prescription. Ms. Neville did not file her claim until December 12, 2018. This court granted Dr. Savoie's writ application and dismissed with prejudice Ms. Neville's medical malpractice claim. Ms. Neville asserts that this court's finding that the deadline for filing was missed in the underlying action is a binding

judicial determination, and further establishes *prima facie* evidence of Redmann's negligence sufficient to support summary judgment on liability.

Opposing Ms. Neville's motion for partial summary judgment, Redmann contends that as a matter of law this court's decision in the underlying proceeding on the timeliness of the MRP request has no force or effect in the present legal malpractice case. Specifically, Redmann avers that the doctrines of law of the case and *res judicata* do not apply because Redmann was not a party to the underlying proceeding.

The trial court concluded that both legal theories applied and granted Ms. Neville's motion for summary judgment on the issue of liability, and reserved the issue of damages for a later determination. We therefore address the application of both legal doctrines in this case.

### Law of the Case Doctrine

The "law of the case" doctrine relates to:

(a) the binding force of trial court rulings during later stages of the trial;

(b) the conclusive effects of appellate rulings at the trial on remand; and

(c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.

Petition of the Sewerage & Water Bd. of New Orleans, 278 So.2d 81, 83 (La. 1973); Day v. Campbell-Grosjean Roofing & S. M. Corp., 260 La. 325, 256 So.2d 105 (1971); Bonar v. Bonar, 00-232 (La. App. 5 Cir. 8/29/00), 768 So.2d 194, 198. The purpose for application of the law of the case principle is the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency; and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. Petition of Sewerage & Water Bd. of New Orleans, 278 So.2d at 83. For this reason, the law of the case doctrine precludes reconsideration of issues that were previously fully litigated. Jeff Mercer, L.L.C. v. State, Dep't of Transp. & Dev., 14-1751 (La. App.

1 Cir. 6/5/15), 174 So.3d 1180, 1185. However, the doctrine applies *only* to those parties who were parties to the case when the former appellate decision was rendered and who thus had their day in court. Gooding v. Merrigan, 15-200 (La. App. 5 Cir. 11/19/15), 180 So.3d 578, 580 (quoting Pumphrey v. City of New Orleans, 05-979 (La. 4/04/06), 925 So.2d 1202, 1207). The law of the case doctrine is discretionary. Herrera v. Beatrice Gallegos & USAgencies Cas. Ins., 14-935 (La. App. 5 Cir. 10/28/15), 178 So.3d 164, 168. The law of the case doctrine is not applicable in cases of palpable error or when, if the law of the case were applied, manifest injustice would occur. Id.

Furthermore, the law of the case doctrine only applies to rulings rendered within the same case, not those rendered in two separate lawsuits. *See* Reed v. Louisiana Horticulture Commission, 21-657 (La. App. 1 Cir. 12/22/21), 341 So.3d 66, 70, writ denied, 22-284 (La. 4/12/22), 336 So.3d 89. ("The law of the case doctrine . . . is the proper procedural principle for describing the relationship between prior judgments by trial and appellate courts rendered within the same case.")

Ms. Neville claims that under the law of the case doctrine, this court having previously found that the MRP request was untimely in the medical malpractice suit, precludes determination of the timeliness issue in the present legal malpractice action. On the other hand, Redmann argues that the law of the case doctrine does not apply because the medical malpractice action involved different parties. We agree with Redmann.

This court's June 30, 2020 decision is not binding on Redmann because Redmann was not a party to the underlying action. The law of the case doctrine only applies to those parties who were parties to the case when the relevant decision was rendered. The medical malpractice action involved Ms. Neville and party defendants, Dr. Savoie and Omega Hospital. By contrast, this legal malpractice action involves Ms. Neville and party defendants (appellants herein), Mr. Redmann,

the Law Office of John W. Redmann, and the North River Insurance Company. Because Redmann was not a party to the underlying action for medical malpractice when our June 30, 2020 decision was rendered, we find the law of the case doctrine does not apply. We further find that law of the case does not apply because the ruling was rendered in a different case.

Furthermore, even if this court were to find that it applies, doing so would be manifestly unjust. As previously stated, the purpose of the doctrine's application is to avoid relitigation of the same issue; to promote consistency of result in the same litigation, and to promote efficiency and fairness to both parties by providing a single opportunity for argument and decision of the disputed issue. Because Redmann was not a party to the underlying suit, it did not appear or have an opportunity to participate in the litigation that resulted in the granting of Dr. Savoie's exception of prescription. Thus, Redmann did not have its day in court. To apply the doctrine in this legal malpractice case would result in manifest injustice.[6]

For these reasons, we find that the trial court erred as a matter of law in applying the law of the case doctrine to grant Ms. Neville summary judgment.

### Doctrine of Res Judicata

Ms. Neville also asserts that this court's June 30, 2020 writ disposition is binding precedent based on the doctrine of *res judicata*. The doctrine of *res judicata* is set forth in La. R.S. 13:4231, *et seq*. Pursuant to 13:4231, a subsequent action is precluded when *all* of the following are satisfied:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

---

[6] Redmann additionally argues that it would be manifestly unfair to use law of the case to establish liability against Redmann, where Successor Counsel represented Ms. Neville in the underlying proceeding on the exception that ultimately resulted in an adverse ruling "during his watch."

Chauvin v. Exxon Mobil Corp., 14-0808 (La. 12/9/14), 158 So.3d 761, 765 (citation omitted); Muhammad v. Office of the DA for St. James, 16-9 (La. App. 5 Cir. 4/27/16), 191 So.3d 1149, 1155. In addition, *res judicata* is strictly construed, and "any doubt concerning its applicability is to be resolved against the party raising the objection." Id.

*Res judicata* does not apply in this case. La. R.S. 13:4231 requires that Ms. Neville show that the parties in the underlying medical malpractice case are the same as in the instant legal malpractice case. In Burguieres v. Pollingue, 02-1385 (La. 2/25/03), 843 So.2d 1049, 1054, the Louisiana Supreme Court stated "there must be 'identity of parties' before the doctrine of *res judicata* can be used to preclude a subsequent suit. This requirement does not mean that the parties must have the same physical identity, but that the parties must appear in the same capacities in both suits." Id. As explained above, the parties in the medical malpractice action are not the same in this action. Although Ms. Neville is the plaintiff in both actions, Redmann was not a party in the underlying action in any capacity. Redmann correctly argues that it was neither a third-party defendant, nor were its interests represented in defending against the claim. Therefore, Ms. Neville has failed to prove that the identity of the parties is the same in both suits.

Because all elements of *res judicata* must be present for this doctrine to apply, the lack of the same parties in the two suits is fatal to her motion for summary judgment. Accordingly, we find that the trial court also erred in granting summary judgment on the basis that the doctrine of *res judicata* applied.

Because we conclude that the judgment granting partial summary judgment should be reversed based on the above, we find that it not necessary for this court to opine on the additional issues raised by defendants in opposition to the summary judgment motion. "It is well-settled that courts will not decide abstract, hypothetical

or moot controversies, or render advisory opinions with respect to such controversies." <u>Perschall v. State</u>, 96-0322 (La. 7/1/97), 697 So.2d 240, 251.

**DECREE**

For the reasons stated above, we reverse the trial court's judgment granting partial summary judgment in favor of Ms. Neville and deny that motion and remand this case for further proceedings.

<u>**REVERSED and REMANDED**</u>

KAYLA M. NEVILLE                           NO. 22-CA-175

VERSUS                                     FIFTH CIRCUIT

JOHN W. REDMANN, LAW OFFICE OF             COURT OF APPEAL
JOHN W. REDMANN, LLC, AND XYZ
INSURANCE COMPANY                          STATE OF LOUISIANA


**WICKER, J., CONCURS WITH REASONS**

While I agree with the majority's conclusion that the trial court erred in granting summary judgment in this case, respectfully, I write separately to address my appreciation of the issue presented for consideration on summary judgment. Specifically, I agree with the majority's discussion of the doctrines of law of the case and res judicata and finding that the trial court erred in applying those doctrines to grant partial summary judgment. However, while the majority concludes that because these doctrines do not apply, we need not address the "additional issues" raised by Redmann in opposition to partial summary judgment. In my opinion, the arguments raised in Redmann's opposition are properly before this Court and should be addressed at this time. Respectfully, I write separately to both elucidate further on the law of the case and *res judicata* doctrines and to address the arguments raised in Redmann's opposition as it relates to the issue of liability.

First, I agree that the law of the case doctrine does not apply because: (1) the defendants, John W. Redmann and the Law Office of John W. Redmann (collectively "Redmann"), were not parties to the underlying medical malpractice proceeding; and (2) the doctrine of law of the case only applies to rulings rendered within the same case. I also agree that the doctrine of *res judicata* does not apply

22-CA-175                           1

because, as mentioned, Redmann was not a party to the underlying suit. However, I also point out that the doctrine of *res judicata* does not apply because the cause of action in this legal malpractice case did not arise out of the same transaction or occurrence that was the subject matter of the medical malpractice case. *Res judicata* "precludes relitigation of claims and issues arising out of the same factual circumstances as a previous suit when there is a valid final judgment." *Blackburn v. Green*, 18-583 (La. App. 5 Cir. 2/27/19), 266 So.3d 546, 551. While the timeliness of the Medical Review Panel ("MRP") request is a consideration in both cases, the cause of action in the legal malpractice case is *not* the subject matter of the medical malpractice case. The medical malpractice action arose from Dr. Savoie's treatment of Ms. Neville; whereas, this legal malpractice action arises from Redmann's representation of Ms. Neville. *Res judicata* is strictly construed and all elements must be met in order for the doctrine to apply. *See* La. R.S. 13:4231; *also Muhammad v. Off. of Dist. Att'y for Par. of St. James*, 16-9 (La. App. 5 Cir. 4/27/16), 191 So. 3d 1149, 1155 ("The doctrine of res judicata is stricti juris, and any doubt concerning the application of res judicata must be resolved against its application"). Therefore, as a matter of law, *res judicata* does not apply because, as stated by the majority, Ms. Neville cannot prove that the parties are the same. Further, however, Ms. Neville cannot prove that the cause of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

I turn now to the matters which the majority chose not to address. The majority's decision to pretermit discussion of the merits of Redmann's opposition relies on, in my view, a misinterpretation of the issue presented for consideration on partial summary judgment. Further, in my view, resolution and discussion of the merits of Redmann's opposition is material to understanding why the trial court erred in granting Ms. Neville's motion for partial summary judgment.

Ms. Neville's motion for partial summary judgment states that "there is no genuine issue of material fact regarding [Redmann's] legal malpractice" and that "she is entitled to a summary judgment on liability, based on the precedential and preclusive nature of [this Court's June 30, 2020 writ disposition in the underlying proceeding]." The trial court granted summary judgment on liability, while reserving the issue of damages for later consideration.

La. C.C.P. art. 966(F) mandates that summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." A review of Ms. Neville's motion shows that she asked the trial court to rule on the **issue of liability**. Ms. Neville's motion for partial summary judgment asserts that there are no genuine issues of material fact on the issue of liability. The doctrines of law of the case and *res judicata* are simply the legal grounds upon which she relies to assert that a prior decision of this Court in a separate lawsuit establishes Redmann's liability. However, Ms. Neville's motion erroneously conflates liability and negligence, which are two distinct inquiries with different considerations. Therefore, finding that the doctrines of law of the case and *res judicata* do not apply only partially resolves the issue of liability.

As the majority discussed, in order to prove liability in a legal malpractice case, the plaintiff must establish: (1) an attorney-client relationship; (2) the attorney was negligent in his representation of his client; and (3) the negligence caused plaintiff's loss. *Willis v. Meilleur*, 11-705 (La. App. 5 Cir. 5/31/12), 96 So.3d 1259, 1270 (citing *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129, 138). The trial court's judgment, which found summary judgment in favor of Ms. Neville as to liability, while remaining silent as to the question of causation and while also reserving the issue of damages, is contrary to what the law requires Ms. Neville to

prove.

As the majority opines "for purposes of summary judgment in this case, there is a significant difference between a finding of negligence and a finding of liability." In a legal malpractice action, negligence is but one of the three elements that a plaintiff must prove in order to prevail; whereas, liability requires the plaintiff prove all three elements in order to prevail. As the majority states while "it is possible that plaintiff may successfully prove she is entitled to partial summary judgment on the issue of negligence or breach of the standard of care without establishing the third element of a legal malpractice claim… the same cannot be said for liability."

Although it is plausible that Ms. Neville's plea in her motion for partial summary judgment to rule on the issue of "liability," was in fact calling on the trial court to evaluate the issue of negligence, the argument was never raised in reply to Redmann's opposition, which argued that liability requires proof of all three elements, including causation. Therefore, because Ms. Neville's motion asks the trial court to rule on the issue of **liability**, and **not negligence**, in my opinion, our *de novo* review calls upon us to consider the full scope of the liability issue, with fresh consideration of the exhibits, applicable law, and arguments raised by both parties.[7]

As the mover, Ms. Neville has the initial burden of establishing that Redmann

---

[7] Because an appellate court's standard of review of a judgment granting summary judgment is *de novo*, we are not constrained to only a review of the trial court's reasoning. *Bertaut v. Corral Gulfsouth, Inc.*, 16-93 (La. App. 5 Cir. 12/21/16), 209 So.3d 352, 359. "A de novo review 'involves examining the facts and evidence in the record, without regard or deference to the judgment of the trial court or its reasons for judgment.'" *Hooper v. Hero Lands Co.*, 15-929 (La. App. 4 Cir. 03/30/16), 216 So.3d 965, 973-74. Although reasons for judgment may be informative, they are not determinative of the legal issues to be resolved on appeal. *Id.* Moreover, appellate courts review judgments, not reasons for judgments, and an appellate court's reasoning for its decision on appeal may differ "than those assigned by the district judges." *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 04/01/11), 61 So.3d 507, 572. "An appellate court's *de novo* review of the trial court's ruling on summary judgment is generally from the same viewpoint as that of the trial court, but with a fresh consideration of the exhibits and application of the law." *Allday v. Newpark Square I Off. Condo. Ass'n, Inc.*, 20-358 (La. App. 5 Cir. 8/18/21), 327 So.3d 566, 573 (emphasis added).

was negligent in its representation of her. If Ms. Neville established *prima facie* evidence of negligence, the burden of proof then shifted to Redmann to show genuine issues of material fact exist precluding summary judgment. In this case, Redmann established that law of the case and *res judicata* do not apply, and therefore that Ms. Neville cannot rely on these doctrines to prove negligence. However, Redmann also presented evidence and set forth facts demonstrating that genuine issues of material fact remain as to causation and damages that the trial court failed to consider, as evidenced by its judgment reserving the issue of damages while still finding Ms. Neville proved liability.

In *Fortenberry v. Cont'l Cas. Co.*, 15-418 (La. App. 3 Cir. 11/4/15), 179 So.3d 729, the plaintiff brought a legal malpractice action against the attorney she retained to represent her in a personal injury case arising from a motor vehicle accident. The plaintiff alleged that the defendant attorney failed to file her petition for damages in a timely manner. The plaintiff subsequently moved for partial summary judgment against the defendant attorney, which the trial court granted "as to liability only." *Id.* at 731. On appeal, the Third Circuit reversed the trial court's granting of summary judgment, finding that the plaintiff failed to refute the defendant attorney's evidence relating to the third prong of a legal malpractice claim.

The *Fortenberry* court held that:

> where liability for legal malpractice does not attach until it is shown that the plaintiff suffered damages for which she would have recovered but for the attorney's mishandling of the suit, and where the attorney establishes a material issue of fact regarding the plaintiff's underlying damages, summary judgment was granted in error.

*Id.* at 735. Moreover, in that the defendant attorney was not the moving party on summary judgment, the appellate court held that "he does not have to show that [the plaintiff]'s suit will certainly fail at trial. He only needs to show that there are

material factual disputes regarding an essential element of the plaintiff's claim...."
*Id.*

On summary judgment, the plaintiff in *Fortenberry* submitted her own affidavit, the attorney-client contract, the petition showing that the defendant attorney filed her claim five days past the prescriptive period, as well as a letter from the defendant regarding prescription. The defendant attorney opposed the motion for summary judgment with affidavits and deposition testimony of witnesses to the accident that indicated that the plaintiff was not inside her vehicle at the time of the accident; she showed no sign of or complained of any injury; and she was "'affable' in her demeanor and checking to see if [others] were okay." *Id.* The Third Circuit concluded that the defendant attorney presented sufficient evidence to establish a genuine issue of material fact as to whether the plaintiff was in the vehicle at the time her vehicle was rear-ended. Additionally, the appellate court cited the plaintiff's failure to refute the defendant's evidence with any evidence of her own or show that she could prevail at trial on the issue of damages and therefore found summary judgment inappropriate.

The instant case is procedurally and factually similar to *Fortenberry*. In order for liability to attach for legal malpractice, Ms. Neville is required to show she "suffered damages for which she would have recovered but for [Redmann's] mishandling of the suit," and that Redmann has failed to present evidence to establish that a genuine issue of material fact exists regarding Ms. Neville's underlying damages. Although Redmann need only establish that one of the essential elements of Ms. Neville's legal malpractice claim presents an issue of material fact, Redmann has presented evidence to show that genuine issues of material fact exist as to the cause of the dismissal of the medical malpractice case as well as whether Ms. Neville could prove damages at trial.

First, Redmann submits that there are genuine issues of material fact as to the cause of the dismissal of Ms. Neville's medical malpractice suit. Redmann maintains that the issue of causation necessarily involves an evaluation of comparative fault in this case and consideration of whether the actions and inactions of Successor Counsel contributed to any alleged damages Ms. Neville claims she suffered. Redmann points to the record in the medical malpractice case to demonstrate that Successor Counsel failed to present any evidence in the trial court in opposition to the exception of prescription to show that the MRP request was timely filed. The five-page opposition is devoid of any supporting documentation. In particular, Redmann cites to the absence of medical records, affidavits, or any other evidence supportive of Successor Counsel's arguments on the prescription issue.

The opposition to the exception of prescription alleged that the MRP request was filed within one year of Ms. Neville discovering that the screws previously inserted in her olecranon "were not absorbable screws as she had been informed" and within one year of the screws' subsequent removal. Redmann maintains that these arguments "could have been bolstered by inclusion of *any* evidence" including: an affidavit from Dr. Williams, the full medical record of Ms. Neville's treatment with Dr. Williams[8]; Dr. Williams' December 2018 Operative Note, describing what he observed in the second surgery; evidence of Ms. Neville's treatment following the second surgery; and affidavits of Ms. Neville and her father, who attended the November doctors' visits with Ms. Neville. Moreover, Redmann avers that

---

[8] Redmann alleges that Dr. Savoie introduced only portions of the medical records into the record. In this legal malpractice case, Redmann introduced into the record the full medical record of Ms. Neville's treatment with Dr. Williams. Redmann alleges that in the underlying medical malpractice case, Successor Counsel, at minimum, should have included Dr. Williams' post-operative note that showed what was discovered during surgery, if not the full medical record. According to Redmann, because Successor Counsel raised fact-based arguments to support the timeliness of Ms. Neville's MRP request, the failure to support its fact-based arguments with any evidence is significant.

deposition testimony of Ms. Neville and Drs. Savoie and Williams would have been useful in presenting a more robust case for opposing the exception of prescription.

Similarly, Redmann contends that Successor Counsel "omitted a crucial [legal] argument" that the prescriptive period for filing the MRP request was interrupted by the then-still pending workers' compensation litigation. Redmann contends that case law suggests that a worker's compensation proceeding that is pending in another state can interrupt prescription of a plaintiff's medical malpractice claim in Louisiana, relying on *Jarrell v. W. Jefferson Med. Ctr.*, 06-889 (La. App. 5 Cir. 3/13/07), 956 So.2d 5. While I make no determination as to the merits of this legal issue, a review of relevant case law demonstrates that circuits in this state are split as to whether a timely filed suit against a solidarily liable non-healthcare provider (e.g. Ms. Neville's workers' compensation claim) interrupts prescription of claims against a qualified healthcare provider subject to Louisiana's Medical Malpractice Act (e.g. Ms. Neville's medical malpractice claim). *See Novak v. Lafayette City-Par. Consol. Gov't, unpub.*, 2011 WL 3489857, (W.D. La. 3/03/11). The fact that the body of caselaw on the issue is unclear, demonstrates that whether this argument could have, in Redmann's words, "saved the day" creates another genuine issue of material fact, illustrating that summary judgment is inappropriate. Moreover, in the underlying medical malpractice case, after Dr. Savoie sought supervisory review with this Court, Successor Counsel failed to submit any evidence to support its opposition, despite requesting an opportunity to supplement and failing to do so before this Court initially denied the writ application and after granting Dr. Savoie's motion for reconsideration.

The exception of prescription in the underlying medical malpractice case was filed after Redmann had withdrawn from representation of Ms. Neville. The record on the exception of prescription is comprised of evidence Successor Counsel

developed. Consequently, this Court's June 30, 2020 writ disposition in underlying action, Redmann argues, was predicated on what was presented to us, which lacked supporting evidence and robust legal arguments to adequately challenge Dr. Savoie's exception of prescription.

I make no any factual determinations as to whether the actions of Successor Counsel contributed in any way to Ms. Neville's alleged loss. Nevertheless, any determination of liability in this legal malpractice case will necessarily include consideration of the actions of Successor Counsel in opposing the exception of prescription. To find otherwise, would deprive Redmann of his day in court to have the fact-finder fully evaluate the totality of the circumstances. Issues that require "the determination of [the] reasonableness of acts and conduct of parties under all facts and circumstances of the case," like those presented here, "cannot ordinarily be disposed of by summary judgment." *Biggs v. Cancienne*, 12-0187 (La. App. 1 Cir. 9/21/12), 111 So.3d 6, 10. Likewise, "questions of negligence are generally inappropriate for disposition by summary judgment." *Id.* In this case, Redmann has presented sufficient evidence that calls into question whether Successor Counsel could have done more to protect against a finding of prescription, particularly where no evidence was submitted in the trial court or on supervisory review.

Therefore, while I make no factual determination on the issue of whether Successor Counsel took reasonable measures to adequately defend Ms. Neville against the exceptions of prescription and the writ to this Court in the underlying proceeding, Ms. Neville failed to present any evidence that refutes Redmann's assertions, which is supported by evidence in the record, that issues of material fact

exist as to whether any alleged loss on Ms. Neville's part was the sole doing of Redmann.[9]

Considering the limited record in the underlying medical malpractice case and the lack of discovery in the instant legal malpractice case, Redmann presents sufficient facts supported by the record that demonstrate a genuine issue of material fact exists as to the cause of Ms. Neville's underlying claim against Dr. Savoie. In fact, by demonstrating issues remain as to the cause of Ms. Neville's alleged loss, Redmann also proves that a genuine issue of material fact also exists as to whether adequate discovery was conducted in the underlying medical malpractice case. For these reasons, in my opinion, adequate discovery was not completed prior to the trial court entering summary judgment in favor of Ms. Neville, and therefore, in granting summary judgment on liability at this stage of the litigation was premature.

Moreover, a material issue of fact exists as to whether Ms. Neville can establish she suffered damages in her underlying claim against Dr. Savoie. Redmann offered the affidavit of Mr. Redmann, a copy of the letter of withdrawal of representation Redmann sent Ms. Neville, and relevant medical records on the damages issue. Mr. Redmann's affidavit and the letter of withdrawal indicate that after continued evaluation of Ms. Neville's claim, Redmann determined that the likelihood she would prevail in her claim against Dr. Savoie was low. Redmann also communicated its assessment to Ms. Neville in a telephone conversation. In addition, the relevant medical records evidence that the risks associated with the surgery were disclosed to Ms. Neville, including the failure of a surgical screw to dissolve. After Redmann explained its appreciation of the likelihood of prevailing on her medical malpractice claim, Ms. Neville expressed her desire to continue to pursue her claim, at which point Redmann withdrew from representation. Based on

---

[9] "A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." La. C.C.P. art. 966(F).

the foregoing, while this Court has no opinion as to whether Ms. Neville could successfully prove damages at trial, in my opinion, Redmann has presented unrefuted evidence sufficient to show genuine issues of material fact remain as Ms. Neville's alleged damages.

By relying upon its legally erroneous application of the law of the case doctrine and *res judicata*, the trial court also failed to consider the unrefuted evidence Redmann produced to establish genuine issues of material fact exist as to the cause of Ms. Neville's loss and her ability to prove damages. For these reasons, as well as those addressed by the majority, summary judgment inappropriate.

In light of the foregoing, I agree with the majority that the doctrines of law of the case and *res judicata* do not apply; however, in my opinion, Ms. Neville's motion for partial summary judgment calls for resolution of the issue of liability. In that the trial court's judgment is internally inconsistent and therefore, on its face, legal error, in my opinion this Court would also have been well-served to address the merits of Redmann's opposition, which is material to a full understanding of why the trial court's judgment granting Ms. Neville's motion for partial summary judgment was legal error.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 31, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-175

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)

| | | |
|---|---|---|
| JOHN O. PIEKSEN, JR. (APPELLEE) | MICHAEL G. BAGNERIS (APPELLEE) | BEVERLY A. DELAUNE (APPELLANT) |
| KAREN P. HOLLAND (APPELLANT) | MELISSA M. LESSELL (APPELLANT) | |

**MAILED**
BLAIR E. BOYD (APPELLANT)
ATTORNEY AT LAW
755 MAGAZINE STREET
NEW ORLEANS, LA 70130